# In the United States Court of Federal Claims

No. 18-1851 C
(Filed: August 27, 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **APL MICROSCOPIC, LLC,** | \* Copyright Infringement; Motion to Dismiss; |
|  | \* Statute of Limitations; Subject Matter |
| Plaintiff, | \* Jurisdiction; Display Rights; Separate Harms; |
|  | \* Continuing Harm; Failure to State a Claim; |
| v. | \* Reproduction Rights; Distribution Rights. |
| **THE UNITED STATES,** |  |
| Defendant. |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Joel Benjamin Rothman*, Schneider Rothman Intellectual Property, Boca Raton, FL, for Plaintiff.

*Patrick Charles Holvey*, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., with whom were *Conrad J. DeWitte, Jr.*, Of Counsel, Civil Division, *Gary L. Hausken*, Director, Civil Division, *Joseph H. Hunt*, Assistant Attorney General, U.S. Department of Justice, for Defendant.

## ORDER AND OPINION

**DAMICH**, Senior Judge.

On December 3, 2018, Plaintiff, APL Microscopic, LLC ("APL"), filed a complaint in this Court alleging that Defendant, the United States of America (the "Government"), through the National Aeronautics and Space Administration ("NASA"), infringed on APL's rights under the Copyright Act, 17 U.S.C. § 106, by posting APL's copyrighted photograph (the "Work") on a webpage within NASA's website in 2004. APL sought $150,000 in statutory damages, actual damages, and injunctive relief.

On February 7, 2019, the Government filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC).

On March 6, 2019, APL filed an Amended Complaint, still alleging that the photograph posted on NASA's website in 2004 constitutes copyright infringement but now seeking only actual damages.

On March 18, 2019, the Government filed another motion to dismiss pursuant to RCFC Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.

On June 3, 2019, the Court ordered that APL amend its First Amended Complaint again, directing APL to "separately list[] each of the rights identified in the Copyright Act which Plaintiff believes Defendant has infringed" and "[f]or each of the rights allegedly infringed . . . give some more specific information on damages."  In addition, the Court ordered the parties to provide supplemental briefing on the issue of whether public display occurs when the owner of a website puts a protected work on its server (without authorization) so that it is made available for viewing by individual computer users who access the relevant page on the website, or, whether public display occurs only when—and each time—an individual computer user accesses the relevant page on the website.

On June 17, 2019, APL filed its Second Amended Complaint ("SAC"), listing three rights under the Copyright Act which it alleges were infringed upon by the Government: (1) the right of reproduction; (2) the right of public distribution; and (3) the right of public display.  Second Am. Compl., ECF No. 19.  With respect to damages, APL's SAC seeks "actual damages measured by 'the fair market value' of the licensing fees the owner was entitled to charge for [the use of the copyrighted work]."

On June 24, 2019, the parties filed their respective supplemental briefs on the issue of public display.

On July 23, 2019, the Court ordered supplemental briefing on the following question concerning the right of distribution:

> Does a public distribution occur when the owner of a website uploads a protected work on its server (without authorization) so that it is made available for viewing and downloading by individual computer users who access the relevant page on the website, or, does a distribution occur when—and each time—an individual computer user accesses the relevant page on the website?

On August 6, 2019, the parties timely filed their supplemental briefs.  This matter is now fully briefed and ripe for a decision.

For the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Government's motion to dismiss for lack of subject matter jurisdiction and **DENIES** the Government's motion to dismiss for failure to state a claim.

I.   FACTS

Andrew Paul Leonard is a photographer specializing in microscopic imagery, who markets his photographs through his sole proprietorship APL Microscopic, LLC.  *See Leonard v. Stemtech International Inc.*, 834 F.3d 376, 382 (3d Cir. 2016).[1]  In 1996, Mr. Leonard, through

---

[1] The Court takes judicial notice of the Third Circuit's opinion, pursuant to Rule 201 of the Federal Rules of Evidence, as it involved the same plaintiff and photograph at issue in this

APL, created a photograph of human bone marrow stem cells (the "Work"). Second Am. Compl. at 3. Below is the photograph at issue in this case.



In August 2004, NASA posted the photograph on its webpage with copyright information identifying Mr. Leonard as the copyright holder and attributing the photo to Stanford Magazine. The webpage was last updated on November 30, 2007.

On December 20, 2007, APL registered the Work with the Register of Copyrights and was assigned the registration number VA 1-426-177. *Id.*

On December 3, 2018, APL filed this suit.

## II.   LEGAL STANDARDS

### 1. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under RCFC Rule 12(b)(1)

The burden of establishing subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976).

When faced with a motion to dismiss for lack of subject matter jurisdiction pursuant to the RCFC Rule 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The movant, however, may challenge the truth of any facts upon which jurisdiction depends. *See*

---

suit, and Plaintiff's counsel in this case did not adequately explain the relationship between Mr. Leonard and APL Microscopic.

*Raymark Indus. v. United States*, 15 Cl. Ct. 334, 338 (1988). If it does, the plaintiff must come forward with a *prima facie* showing of jurisdiction. *Id.* The plaintiff cannot rely only on its allegations. *See Hornback v. United States*, 52 Fed. Cl. 374, 377 (2002). Moreover, the Court may look to evidence outside of the pleadings in order to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

### 2. Motion to Dismiss for Failure to State a Claim Under RCFC Rule 12(b)(6)

Under RCFC Rule 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Pursuant to RCFC Rule 12(b)(6), the Court will grant a defendant's motion to dismiss if it finds the plaintiff has failed to state a claim upon which relief may be granted. In considering a motion to dismiss for failure to state a claim, the Court "must accept as true all of the allegations in the complaint" and "must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

In order for a claim to be properly stated, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* This plausibility standard requires that a complaint contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Neither allegations "that are 'merely consistent with' a defendant's liability," nor "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are sufficient. *Id.* A complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

Section 106 of the Copyright Act grants a copyright owner "exclusive rights," including the right "to reproduce the copyrighted work in copies or phonorecords," "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership," and "to display the copyrighted work publicly." 17 U.S.C. § 106(1), (3), (5). Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." Where the United States Government is alleged to have infringed on a copyright, 28 U.S.C. § 1498(b) permits the owner to bring an action in the United States Court of Federal Claims "for the recovery of his reasonable and entire compensation as damages for such infringement." However, this section also provides that "no recovery shall be had for any infringement of a copyright covered by [Section 1498(b)] committed more than three years prior to the filing of the complaint . . . ." 28 U.S.C. § 1498(b).

In its SAC, APL alleges that the Government infringed on three of APL's exclusive

rights under the Copyright Act: (1) the right of reproduction; (2) the right of public distribution; and (3) the right of public display. *See* Second Am. Compl., at 3–6. Specifically, APL alleges that NASA initially infringed on these rights in 2004 when the Work was first uploaded to NASA's server and displayed on its webpage(s). APL also argues that additional, separate infringements have occurred through the present day, because, according to APL, the Work is reproduced, distributed and/or displayed each time an individual user visits NASA's webpage. Second Am. Compl., at 4.

With respect to damages, APL "concedes that the plain language of § 1498(b) prevents APL from recovering for violations . . . that occurred more than three years prior to the filing of the complaint in this case." Pl's Resp., ECF No. 16 at 4. However, APL contends that it has suffered damages within three years of the filing of its complaint due to infringements that have occurred within that time. Second Am. Compl., at 8.

In its Motion to Dismiss,[2] the Government argues that the Court lacks subject matter jurisdiction over this suit because APL alleges only one act of infringement of the rights of reproduction, public display and public distribution that occurred in 2004, meaning that APL had until 2007 to file suit under the 3-year statute of limitations set forth in 28 U.S.C. § 1498(b).

As explained below, the Court agrees that APL's claim of infringement as to the right of reproduction is time-barred but finds that APL's claims as to the right of distribution and right of display are timely.

### 1. Claim Accrual Principles

Under 28 U.S.C. § 1498(b), "no recovery shall be had for any infringement of a copyright covered by [Section 1498(b)] committed more than three years prior to the filing of the complaint . . . ." *See also* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). In general, "a cause of action accrues when all the events have occurred that fix the defendant's alleged liability and entitle the plaintiff to institute an action." *Fallini v. United States*, 56 F. 3d 1378, 1380 (Fed. Cir. 1995); *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Consistent with the general rule, the Supreme Court has stated that "[a] copyright claim . . . arises or 'accrues' when an infringing act occurs." *Petralla v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 633, 670 (2014).

When multiple or successive acts of infringement are alleged, the separate-accrual rule may be implicated. In *Petralla v. Metro-Goldwyn-Mayer*, the Supreme Court recognized this rule and explained that:

---

[2] The Court did not require the Government to file an additional motion to dismiss after Plaintiff's SAC because the substance of the Government's challenge remained applicable, and the Court has had the benefit of the Government's views on the right of display and the right of public distribution via supplemental briefing.

5

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs. In short, each infringing act starts a new limitations period. Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

572 U.S. 663, 671–72 (2014) (citations omitted); *see also Wechsberg v. United States*, 54 Fed. Cl. 158, 161 (2002) ("[a] cause of action under Section 1498(b) accrues as late as, and the statute of limitations therein begins to run from, the time of the most recent act of infringement in a series of infringing acts."). The Supreme Court also cautioned that "[s]eparately accruing harm should not be confused with harm from past violations that are continuing." *Petralla*, 572 U.S. at 671 n.6.

Similarly, in *Wechsberg v. United States*, this Court rejected the continuing wrong doctrine in the copyright infringement context and held that "a plaintiff may not recover under Section 1498(b) for copyright infringements that occurred outside the limitations period." 54 Fed. Cl. at 161. The Court explained that the holding was "based on the plain language of Section 1498(b), the strict construction of waivers of sovereign immunity that [govern] this Court, and the weight of precedent under general copyright law." *Id.*

With these principles in mind, the Court will consider each of APL's claims.

### 2. Reproduction Right

The Copyright Act grants a copyright owner the exclusive right to "reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. § 106(1). The term "copies" is defined as "material objects, other than phonorecords, in which a work is fixed and by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. A work is "'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

In the digital context, a photographic image is "'fixed' in a tangible medium of expression,' . . . when embodied (i.e., stored) in a computer's server (or hard disk, or other storage device). The image stored in the computer is the 'copy' of the work for purposes of copyright law." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007); *see*

6

*Capitol Records, LLC v. ReDigi, Inc.*, 934 F. Supp. 2d 640, 649 (S.D. NY 2013) ("the reproduction right is necessarily implicated when a copyrighted work is embodied in a new material object").

Here, APL alleges that in 2004, "NASA copied the Work and uploaded the Work to a NASA server," without permission. Second Am. Compl. at 3–4. APL argues that "[w]hen NASA uploaded the Work to the NASA server, NASA reproduced the Work in a copy and thus trespassed upon APL's exclusive right under [17 U.S.C.] § 106(1)." *Id.* at 4. In addition, APL contends that "since 2004, and within the three years prior to the filing of the complaint in this action, NASA made further copies of the Work without authorization in order to facilitate its display of the Work on NASA websites." *Id.*

Based on the definitions in the Copyright Act, the Court agrees that NASA infringed on APL's reproduction right when it initially uploaded the Work to its server in 2004. By uploading the photograph onto its server, NASA created a "copy" of the Work, which was then "fixed" in NASA's server and capable of being "perceived, reproduced, or otherwise communicated." Taking as true APL's allegation that NASA uploaded the Work without authorization, this act infringed on APL's exclusive right to reproduction in 2004 once the upload was complete. However, since "[a] copyright claim . . . arises or 'accrues' when an infringing act occurs," *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 633, 670 (2014), this means APL had until 2007 to bring suit. Clearly, then, APL's claim regarding the infringement of its right of reproduction is time-barred.

Not to be dissuaded, APL attempts to save its claim by arguing that "within the three years prior to the filing of the complaint in this action, NASA made further copies of the work without authorization in order to facilitate the display of the Work on NASA websites." Second Am. Compl., at 4. In essence, APL is alleging that each time NASA's webpage—and the Work contained therein—was displayed, NASA created a new "copy" of the Work, and NASA thereby committed successive acts of infringements on APL's right of reproduction. Because some of these "further copies" are alleged to have been made within the three years prior to the filing of its complaint, APL contends that its claim as to these infringements are timely.

APL's overly expansive interpretation of the right of reproduction cannot withstand scrutiny. Looking to the definitions of "copies" and "fixed" in the Copyright Act, it is apparent that these terms anticipate a subsequent act of display or communication once the "copy" is made. For example, the term "copies" is defined as "material objects, other than phonorecords, in which a work is fixed and by any method now known or later developed, and from which the work can be *perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device*." 17 U.S.C. § 101 (emphasis added). Similarly, "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord . . . is sufficiently permanent or stable *to permit it to be perceived, reproduced, or otherwise communicated* for a period of more than transitory duration." *Id.* (emphasis added).

The fact that the alleged infringement in this case occurred in the digital context does not change the analysis. Once NASA uploaded the Work to its server, a "copy" was made, which was then "fixed" in the server and capable of being "perceived, reproduced, or otherwise

7

communicated." *See Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 657 (2d Cir. 2018) ("the fixing of the digital file in [defendant's] server . . . creates a new phonorecord, which is a reproduction."); *see also Flava Works Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) ("The infringer is the customer . . . who copied [Plaintiff's] copyrighted video by uploading it to the internet."). The Work then resided on NASA's server and was "displayed" when a user visited NASA's website. That the website could be viewed—i.e., "perceived"—by different users at different times, or even simultaneously, does not mean that NASA created separate copies of the Work to facilitate such display.[3] *Cf.* 2 Nimmer on Copyright § 8.20 ("the transmission of the . . . printed version of [literary, musical and dramatic works] so that they may be read by electronic means . . . does not implicate the reproduction right . . . . Such conduct would become infringing only by reason of the display right.").

Therefore, although the Court agrees that the Government infringed on APL's right "to reproduce the copyrighted work" in 2004 when NASA uploaded the photograph to its server, there were no additional reproductions of the Work through NASA's subsequent distribution or display that would bring APL's right of reproduction claim within the statute of limitations period. Consequently, APL's claim regarding infringement of its right of reproduction is barred by the running of the statute of limitations and must be dismissed.

### 3. Distribution Right

Under 17 U.S.C. § 106(3), a copyright owner has exclusive rights "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." The term "distribute" is not defined in the Copyright Act. Therefore, the Court must determine when a "distribution" occurs.

According to APL, a public distribution occurs, and its rights are violated, "each and every time a computer user accesses the defendant's website displaying the protected work." Pl.'s Suppl. Brief on Distribution Right, ECF No. 25, at 1. APL argues that "[t]his is because every time a computer user accesses the defendant's website displaying the protected work . . . [t]he defendant sends information for the relevant page including the protected work to the computer user whose computer assembles the information for display on the user's computer." *Id.* at 1–2.

On the other hand, the Government contends that the right of distribution "is implicated when copies of a work are made available to the public (e.g., placed on the server and available for download via the website) and does not depend on whether members of the public have accessed the distribution (e.g., by downloading the work from the page). Def.'s Suppl. Brief on

---

[3] It should be noted that if a user downloads a copy of the displayed work from the webpage, the user may be liable for direct infringement of the copyright owner's reproduction right and the service provider may be liable for secondary infringement. However, because 28 U.S.C. § 1498 operates as a limited waiver of sovereign immunity, the federal government generally cannot be held secondarily liable for copyright infringement. *See Decca Ltd. v. United States*, 225 Ct. Cl. 326, 335 (1980); *Boyle v. United States*, 200 F.3d 1369, 1373 (Fed. Cir. 2000).

Distribution Right, ECF No. 24, at 1.  In support, the Government compares the language of 17 U.S.C. § 506(a)(1), which sets forth criminal penalties for willful copyright infringement "if the infringement was committed by the distribution of a work being prepared for commercial distribution, *by making it available* on a computer network accessible to members of the public, if such person knew of should have known that the work was intended for commercial distribution."  17 U.S.C. § 506(a)(1)(C) (emphasis added).  According to the Government, because the Copyright Act imposes criminal liability for "making available" a work for distribution, this same standard should be used in determining civil liability.

In this regard, the Court disagrees with the Government.  In *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, the District Court analyzed, and rejected, many the arguments advanced by the Government here.  *See BMG Rights MGMT, LLC v. Cox Comms., Inc.*, 149 F. Supp. 3d 634, 670 (E.D. VA 2015), *rev'd in part,* 881 F.3d 293 (4th Cir. 2018).  The Court finds the *BMG* court's analysis persuasive.

In *BMG*, the owners of more than 1,400 musical composition copyrights sought to hold the internet service provider, Cox Communications, liable for alleged copyright infringement that occurred through its internet service.  *BMG*, 149 F. Supp. 3d at 639.  In determining the scope of the distribution right, the Court distinguished the Fourth Circuit's holding in *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997), which held that a library infringed on a church's right of distribution by making unauthorized microfiche copies of the church's work and making those copies available to the public by placing them in the libraries' catalog, despite there being no evidence that any person actually used the microfiche. *BMG Rights Mgmt.*, 149 F. Supp. 3d at 665–666.  Instead, the *BMG* Court held that "[t]he general rule, supported by the great weight of authority, is that infringement of the distribution right requires an actual dissemination of either copies or phonorecords." *Id.* at 666 (quoting *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008)); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008); *London-Sire Records, Inc. v. Doe*, 542 F. Supp. 2d 153, 166–67 (D. Mass. 2008); *In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 805 (N.D. Cal. 2005); *Musical Prods., Inc. v. Roma's Record Corp.*, No. 05-cv-5903, 2007 WL 750319, at *1 (E.D. N.Y. 2007).  The Court explained that "*Hotaling* did not announce a rule of general applicability, but instead articulated a principle that applies only in cases where it is impossible for a copyright owner to produce proof of actual distribution." *BMG*, 149 F. Supp. 3d at 666.

Next, the *BMG* Court found that the definition of "publication" did not support a broader reading of the distribution right.  *Id.* at 667.  The Copyright Act defines "publication" as

> The distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.

17 U.S.C. § 101.  The *BMG* Court noted that "[t]he first sentence of the definition tracks the language in § 106(3), making it clear that all distributions are publications." *BMG*, 149 F. Supp. 3d at 667.  It went on to explain that "[i]t does not follow from that proposition that the inverse—

9

all publications are distributions—is also true. The 'offering to distribute' language forms an additional category of publications that are not distributions. In short, § 101 provides no support for [plaintiff's] 'making available' theory." *Id.* (internal citations omitted).

In addition, the *BMG* Court considered the whether the language of § 506(a)(1)(C) impacts the interpretation of § 106(3), stating summarily that "[t]his provision and § 101 establish that 'when Congress intends distribution to encompass making available or offering to transfer, it has demonstrated that it is quite capable of explicitly providing that in the statute.'" *Id.* at 668 (quoting *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210 (D. Minn. 2008). Apart from this point, there is good reason to construe the language of § 106(3) and § 506(a)(1)(C) separately.

In our legal system, criminal offenses and civil offenses are treated differently. This is due, in part, to the protections of the Fifth Amendment and the presumption of innocence that attaches in criminal cases. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 167 (1963); *United States v. Ward*, 488 U.S. 242, 248–49 (1980); *see also Apprendi v. New Jersey*, 530 U.S. 466, 476–480 (2000). And it is for these reasons that criminal offenses carry with them a higher burden of proof than civil offenses. *See In re Winship*, 397 U.S. 358, 363 (1970) ("a person accused of a crime would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case."). Indeed, section 506(a)(2), the criminal liability section of the Copyright Act, provides that "[f]or purposes of this subsection, evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright." In contrast, "[t]he general rule, supported by the great weight of authority, is that 'infringement [of § 106(3)] requires an actual dissemination of either copies or phonorecords." *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) (quoting *Nat'l Car Rengtal Sys. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993).

Therefore, the Court rejects the Government's argument that a distribution occurs when a work is "made available" for distribution, and instead holds that infringement of the right of public distribution under § 106(3) requires "actual dissemination of either copies or phonorecords." *See Howell*, 554 F. Supp. 2d at 981; *BMG*, 149 F. Supp. 3d at 666. Although NASA did not infringe on APL's right of distribution by uploading the Work to its server, the act of transmitting the webpage—and the Work therein—to a user would infringe on this right. However, until APL has had the benefit of discovery, it will be impossible to prove if and when copies have actually been disseminated. Because the Court must accept as true APL's allegation that the Government distributed copies of the Work within three years of when APL filed its complaint, the Government's motion to dismiss is denied as it relates to APL's right of distribution claim.

### 4. Display Right

The Copyright Act grants the owner of a copyright exclusive rights to, *inter alia*, "display the copyrighted work publicly." *See* 17 U.S.C. § 106(5). "To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or

process . . . ." 17 U.S.C. § 101.  With regard to the meaning of 'publicly', the Copyright Act provides, in relevant part, that:

> [t]o perform or display a work 'publicly' means - -
>
> . . .
>
> (2) to transmit or otherwise communicate a performance or display of the work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101.

As alluded to above, APL argues that NASA displayed APL's Work in violation of § 106(5) by placing the Work on NASA's website.  Moreover, APL maintains that "[p]ublic display occurs, and § 106(5) is violated, each time an individual computer user accesses the relevant page on a website that displays the protected work."[4]  Pl.'s Suppl. Brief on Display Right, ECF No. 22, at 1.  Thus, according to APL, its claim of infringement as to the right of public display is timely because users have accessed NASA's webpage within three years of when APL filed its complaint.  *See id.* at 6.  However, "APL concedes that the plain language of § 1498(b) prevents APL from recovering for violations of its display right that occurred more than three years prior to the filing of the complaint in this case."  Pl.'s Resp. at 4.

On the other hand, the Government argues that the "right of public display is implicated when the work is placed on display for viewing by the public (*e.g.*, placed on the server and accessible via the website) and does not depend on whether members of the public have in fact viewed the work (*e.g.*, by accessing the page)."  Def.'s Suppl. Brief on Display Right, ECF No. 21, at 1.  Therefore, the Government contends that "the applicable date for limitations purposes is singular and well beyond the jurisdiction of this Court: August 19, 2004."  *Id.* at 7.

In this regard, the Court agrees with APL's articulation of the display right.  The Copyright Act unambiguously states that "[t]o 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process . . . ." 17 U.S.C. § 101.  The definition's usage of the phrase "any other device or process" clearly brings showing a copy of a work through a computer within the statutory definition of "display."  Thus, each unauthorized showing of a Work through a computer infringes on the owner's right of public display.  Other courts that have considered this issue have reached similar conclusions.

---

[4] It should be noted that in Plaintiff's Supplemental Brief on this issue, Plaintiff failed to note that: (1) the language quoted from the *Greenberg v. Nat'l Geographic Society*, 533 F.3d 1244 (11th Cir. 2008) case comes from the dissenting opinion of Judge Birch; (2) the *Kelly v. Arriba Soft Corp.*, 280 F.3d 934 (9th Cir. 2002) opinion was withdrawn and superseded; and (3) the *Flava Works, Inc. v. Gunter*, 2011 U.S. Dist. LEXIS 98451 (N.D. Ill. Sept. 1, 2011) case was vacated.

In *Perfect 10, Inc. v. Amazon.com, Inc.*, the 9th Circuit considered whether an internet search provider infringed on the plaintiff's display rights by storing thumbnail versions of copyrighted images on its server and communicating those images to its users.  508 F.3d 1146, 1155–61 (9th Cir. 2007).  The Court determined that "based on the plain language of [17 U.S.C. § 101], a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory." *Id.* at 1160.  Based on that determination, the Court held that the plaintiff made a "prima facie case that [defendant's] *communication* of its stored thumbnail images directly infringe[d] on [plaintiff's] display right. *Id.* (emphasis added).

Similarly, in *Playboy Enterprises, Inc. v. Webbworld, Inc.*, the defendants owned or operated a website that offered copyrighted photographs and images to subscribers for a monthly fee.  991 F. Supp. 543, 548 (N.D. Tex. 1997).  The defendant "allowed its paying subscribers to view [plaintiff's] copyrighted works on their computer monitors while online," and the Court determined that "[s]uch action constitutes a display . . . ." *Id.* at 551–52.

Here, APL alleges that NASA published the Work on its webpage in 2004, where it has remained until today.  Thereafter, each time a user viewed NASA's webpage, APL's copyrighted Work was displayed on the user's computer.  Consequently, each of these displays constituted a separate infringement on APL's right of public display under § 106(5), with each infringement starting a new limitations period under 28 U.S.C. § 1498(b).  Taking as true APL's allegation that NASA displayed APL's work within three years prior to the filing of the complaint in this action, APL has therefore established subject-matter jurisdiction as to this claim.

Accordingly, the Government's motion to dismiss as to APL's claim of infringement of the right of public display is hereby denied.

### B. Failure to State a Claim

In its SAC, APL claims that it has been damaged within three years prior to the filing of its Complaint and seeks only actual damages, which are "to be determined at trial based on the fair market value method."  *See* Second Am. Compl., at 6–8.  APL explains that actual damages are measured by "the fair market value of the licensing fees 'the owner was entitled to charge for such use.'" *Id.* at 7 (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 165 (2d Cir. 2001).  According to APL, "[p]ursuant to the fair market value method, the Court is entitled to consider the following elements of damage:"

a. Prior licensing fees charged by APL for the [W]ork;
b. Prior licensing fees charged by photo licensing vendors for similar works;
c. The duration of NASA's use of the Work;
d. The manner of NASA's use of the Work;
e. The scarcity of APL's Work;
f. The exceptional high-quality of APL's Work; [and]
g. Other factors impacting fair market value to be proven at trial.

Second Am. Compl., at 8.

Based on the pleadings in its SAC, APL has stated a plausible claim for relief sufficient to overcome the Government's motion to dismiss. Specifically, APL's allegations regarding infringement of its right of distribution and right of public display contain sufficient factual matter to state a plausible claim of copyright infringement. Taking as true APL's claim that it has been damaged within the three years prior to the filing of its Complaint, APL has thus pleaded a cognizable claim of copyright infringement that is compensable pursuant to 17 U.S.C. § 504. Although it would be difficult at this stage to quantify the precise measure of damages, APL has provided a method for calculating such relief, should the Court ultimately find NASA liable for copyright infringement. Moreover, under 17 U.S.C. § 504(c), "the copyright owner may elect, at any time before final judgment is rendered to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." This means that APL may still elect for statutory damages. Therefore, APL has made a sufficient showing to overcome the Government's motion to dismiss for failure to state a claim.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** the Government's Motion to Dismiss for lack of subject matter jurisdiction. In addition, the Court **DENIES** Defendant's Motion to Dismiss for failure to state a claim. The parties are directed to file a joint proposed litigation schedule within 10 days of the date of this order.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge